### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MYRON MOSKOWITZ,** | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **NESHAMINY SCHOOL DISTRICT** *et al.*, | : | **No. 20-5016** |
| *Defendants* | : | |

### MEMORANDUM

PRATTER, J.                                                                    SEPTEMBER 12, 2022

Myron Moskowitz brought suit against his employer, Neshaminy School District, the placement agency, Educational Staffing Solutions, and HR Services Group LLC for the termination of his employment as an instructional aide after he experienced a medical emergency at work. He asserts claims for disability discrimination and retaliation under the Americans with Disabilities Act (ADA) and the Pennsylvania Human Relations Act (PHRA).

All defendants move for summary judgment on all claims. Because there are factual disputes regarding whether Mr. Moskowitz was qualified for his role and whether intermittent leave was a reasonable accommodation for his disability, the Court will deny summary judgment on the discrimination claims except for one portion based on a post-termination leave request. However, because Mr. Moskowitz fails to rebut the defendants' non-retaliatory justification for the termination decision, the Court will grant summary judgment for the defendants on the retaliation claims.

### BACKGROUND

Mr. Moskowitz was hired by Educational Staffing Solutions (ESS) in August 2018 and placed with Neshaminy School District to work as an instructional aide in October 2018. Throughout his employment, Mr. Moskowitz suffered from diabetes, hypertension, heart

1

conditions, and Chronic Obstructive Pulmonary Disease, which resulted in issues walking and catching his breath at times.

## A.  Prior Placements

Mr. Moskowitz resigned from his first teaching job at the Archdiocese of Philadelphia in 2012 because of strokes and heart issues.  Then, his first ESS placement was at the Everitt School within the Bucks County Intermediate Unit.  That placement lasted two months.  Mr. Moskowitz informed ESS that the role at Everitt was a "health risk" because it was too physically demanding.  Moskowitz Dep. Tr. at 38:16, Doc. No. 55-2.  Specifically, he found it difficult to restrain mentally disabled students who misbehaved and ran away from him.  His doctor agreed he should not chase and restrain students.  ESS Area Manager Rebecca Foley removed him from this assignment upon his request.

## B.  Medical Incidents While at Neshaminy School District

ESS next placed Mr. Moskowitz with Neshaminy School District to work as an instructional aide in November 2018.  He experienced two medical incidents for which he had to leave work early in August 2019 and October 2019.  Then, on January 8, 2020, he informed the teacher he was assisting that he was not feeling well and as he began to leave, he collapsed as he walked down the stairs.  He was hospitalized for four days (two work days).  He believes that he may have had a heart attack, but is not sure.

On the day Mr. Moskowitz was taken to the hospital, the District's Director of Human Resources, Kelly Kozik, emailed employees at ESS about Mr. Moskowitz's medical incident.[1] ESS Area Manager Rebecca Foley called Principal Staub and then sent an email to the District's

---

[1]  At this stage, no party challenges the emails as hearsay or otherwise inadmissible.

Supervisor of Special Education, Lorraine Johnson, and the District's Director of Special Education, Anthony Devlin:

> It was brought to my attention that Myron Moskowitz had to be taken from school to the hospital via ambulance. Additionally this has happened two other times this year. The principal has expressed concerns with Myron continuing in his current position as an IA in the high school due to these issues. Would you like us to remove Myron from his current assignment and try to find a replacement?
>
> [-Rebecca Foley]

*Id.* at 547. Ms. Johnson replied:

> Hello Rebecca,
>
> I spoke with Anthony this afternoon. We need someone who can meet the expectations of the position.
>
> Lorraine [Johnson, Neshaminy School District]

*Id.* Later that day, Ms. Foley called Mr. Moskowitz to inform him that the District discontinued his placement. Pl.'s Counter-Statement of Material Facts ¶ 100, Doc. No. 55-1, at 11.

Mr. Moskowitz sent ESS an email requesting FMLA leave on January 13. Mr. Moskowitz then sent Ms. Foley a January 14 note from his doctor clearing him to return to work "without restrictions." Pl.'s Ex. H, Doc. No. 56-9. However, Mr. Moskowitz contends that his doctor's prior limitations regarding not restraining students remained in place. Ms. Foley passed this information along to the District on January 17 with an inquiry about instructional aide placement options for Mr. Moskowitz.

### C. Subsequent Attempts at Placement

ESS determined that there were no permanent positions at the District available for Mr. Moskowitz. ESS holds contracts for permanent placements only at Neshaminy School District and the Bucks County Intermediate Unit (Everitt). Mr. Moskowitz refused to return to the Bucks County Intermediate Unit (Everitt) due to his doctor's advice. Because no permanent placements

were available for Mr. Moskowitz, ESS provided access to the substitute assignment portal and designated him as an active substitute. However, Mr. Moskowitz did not apply for any substitute positions because he wanted a "steady job." ESS Statement of Undisputed Material Facts ¶ 42, Doc. No. 50-1, at 4.

ESS has since placed two other instructional aides at Neshaminy High School. To Ms. Foley's knowledge, these two instructional aides do not have any disabilities and have not requested any time off for medical leave.

Mr. Moskowitz was offered a non-ESS instructional aide role in October 2021, but declined the offer because the role required heavy lifting. He testified that he would not be willing to work for Neshaminy School District now because working for someone he is suing "makes no sense." Moskowitz Dep. Tr. at 226:16–24, Doc. No. 55-2.

**D. This Litigation**

Mr. Moskowitz brought ADA and PHRA claims against the District, ESS, and HR Service Group, LLC under the theory that they were joint employers. Mr. Moskowitz asserts claims against all three for disability discrimination, failure to accommodate, and retaliation under the ADA and PHRA. All defendants now move for summary judgment.

## LEGAL STANDARD

A party moving for summary judgment must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." *Id.* "Summary judgment is appropriate if the non-moving party fails to rebut by making a factual

showing 'sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Power v. Lockheed Martin Corp.*, 419 F. Supp. 3d 878, 888–89 (E.D. Pa. 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The Court must draw factual inferences in the non-moving party's favor. *See Doe v. CARS Prot. Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008). Summary judgment should "be used sparingly in employment discrimination cases." *Id.* at 369. To survive at the summary judgment stage, a non-movant need only show that either "sufficient evidence support[s] the claimed factual dispute," *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968), or "there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed," *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3d Cir. 1991).

### DISCUSSION

Neshaminy School District and ESS assert similar, related grounds for summary judgment. The District argues that Mr. Moskowitz does not introduce evidence that he is able to perform his job's essential functions (regular attendance and lifting), or sufficient evidence that he requested accommodation from the District. The District also argues that ESS, not the District, made the decision to remove Mr. Moskowitz from his placement.

ESS, in turn, argues that there is no evidence of discriminatory animus by ESS or that Mr. Moskowitz requested an accommodation from ESS. ESS also argues that Mr. Moskowitz declined the only other permanent position available at the time and chose not to apply for substitute positions.

Mr. Moskowitz does not oppose HR Services Group LLC's motion for summary judgment. Doc. No. 56, at 1 n.1. Because there is no factual dispute regarding its liability, the Court will grant summary judgment for HR Services Group LLC.

The Court will address the District and ESS's arguments in the context of Mr. Moskowitz's claims for discrimination and retaliation.

## I.    Discrimination

Mr. Moskowitz asserts discrimination claims based on the defendants' termination of his employment and failure to accommodate his disability.

### A.  Termination

In order to establish a prima facie case of discrimination under the ADA or PHRA, a plaintiff must show 1) a disability under the ADA, 2) that the plaintiff is otherwise qualified to perform the "essential functions" of the job, and 3) an adverse employment action as a result of the discrimination. *Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996); *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (noting that PHRA claims follow the same analysis).[2] A person is qualified for a job if they can perform the essential functions either "with or without reasonable accommodation." 42 U.S.C. § 12111(8). For Mr. Moskowitz's termination claims, the parties do not dispute that Mr. Moskowitz's medical conditions constitute a disability under the ADA. But the District argues (1) that Mr. Moskowitz was not able to perform the essential functions of his job and (2) that ESS, not the District, terminated his employment.

---

[2] Although courts sometimes analyze the PHRA under pre-amendment ADA analysis because the PHRA has not been amended to mirror the Americans with Disabilities Act as amended, this distinction is not relevant when the definition of a disability is not at issue. *Sowell v. Kelly Servs., Inc.*, 139 F. Supp. 3d 684, 704 (E.D. Pa. 2015). Because the defendants do not dispute that Mr. Moskowitz is disabled within the meaning of the relevant statutes, the Court applies the same analysis for both sets of claims. *Id.*; *see also Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002) ("There is no argument made by either party that the PHRA should be interpreted any differently from federal law in this case.").

*1.     Essential Functions*

In arguing that Mr. Moskowitz fails to establish that he could perform the essential functions of the instructional aide role, the District focuses on attendance and physical requirements such as lifting.

a)     <u>Attendance</u>

First, the District argues that "being able to be present for work consistently to assist special needs students i[s] an essential job function of being an I[nstructional] A[ide] in the School District." Doc. No. 24-1, at 8.  The District cites case law in which courts have found that consistent presence at school was an essential function for teachers, abstracting this case law as applying to "school employees" such as an instructional aide. Doc. No. 24-1, at 7 (citing *Jordan v. Sch. Dist. of Phila.*, No. 11-cv-2712, 2012 WL 1932177 (E.D. Pa. May 29, 2012), and *Meyers v. Conshohocken Cath. Sch.*, No. 03-cv-4693, 2004 WL 3037945 (E.D. Pa. Dec. 30, 2004)).  In particular, the District argues that "an IA must be able to show up for work regularly and stay at school for the whole school day until his assigned student has gone home for the day." Doc. No. 24-1, at 5.  The District's Special Education Department Chair, Eugene Fox, testified that the District had substitutes available for special education teachers who have to leave due to an emergency, but that if an instructional aide had to leave during the day, the District would not have a substitute available to fill the role. Fox Dep. Tr. at 53:9–54:3, Doc. No. 51-12.  Instead, the teacher would have to continue without an instructional aide for the day. *Id.* at 54:4–6.

The District also introduces its job description for instructional aides to argue that "being present at school every day," lifting over 20 pounds, and other physical tasks (*e.g.*, "toileting"–assisting students with the bathroom) are essential functions. District Ex. 7, Doc. No. 51-10.  But,

although the position description includes the need to lift 20 pounds occasionally and perform "toileting," the description does not actually address frequency or consistency of attendance.

Mr. Moskowitz counters that the case law cited by the District describes the essential functions of teachers rather than instructional aides. Mr. Moskowitz argues that this distinction matters because teachers often serve as the only person leading the classroom. Doc. No. 55, at 19. Mr. Moskowitz also argues that the cases cited by the District involve absences of "hundreds of days" (*Meyers*) and "more than 352 days off from work during the last three years" (*Jordan*), whereas Mr. Moskowitz missed only 4 days out of his 289 days at the District. *Id.* at 19–20.[3] Mr. Moskowitz emphasizes that he always showed up to work on time and that no one can guarantee they will not have to leave work because of an unexpected medical episode.

In reply, the District argues that "the issue in this case is not the number of days that [Mr. Moskowitz] missed work, but rather the fact that [he] was unable to reliably complete his work day even when he did report to work." Doc. No. 61, at 1. This argument, according to Mr. Moskowitz, implies that any employee who has to leave work early because of a medical emergency is not a qualified worker. And the District's allusion to an issue with "when he did report to work" at all mischaracterizes the record because Mr. Moskowitz was never a "no show" who failed to show up for work in the morning. Pl.'s Counter-Statement of Material Facts ¶ 22, Doc. No. 55-1.

Rather than requiring perfect attendance, courts have focused on whether an employee's attendance is "regular and reliable." *Evans v. Coop. Response Ctr., Inc.*, 996 F.3d 539, 546–47 (8th Cir. 2021), *cert. denied*, 142 S. Ct. 769 (2022). Here, Mr. Moskowitz partially missed four

---

[3] Mr. Moskowitz argues that his request was not for *indefinite* leave because Dr. Drucker cleared him to return to work on January 14. Although this was after the termination, he argues that the District's failure to engage in the interactive process supports his failure-to-accommodate claim, discussed *infra*.

work days (including a pre-approved absence for a funeral) in more than a year of employment. There is no evidence that Mr. Moskowitz had a problematic record of attendance issues. In fact, Principal Staub testified that, on the day Mr. Moskowitz's employment was terminated, he was not aware of any attendance issues in the past for Mr. Moskowitz. Staub Dep. Tr. at 48:18–21, 66:23–67:5, Doc. No. 51-11. While the parties do not dispute the facts regarding Mr. Moskowitz's attendance, they do dispute what inferences should be drawn. *Nathanson*, 926 F.2d at 1380.

Drawing all inferences in Mr. Moskowitz's favor, as the Court must do for the non-movant at summary judgment, his attendance (and departure) record could constitute regular and reliable attendance for purposes of establishing that he is a qualified individual. *See Doe*, 527 F.3d at 362.

b)     <u>Physical Requirements</u>

Unlike attendance, the District's instructional aide position description does include physical requirements. Although a job description is one factor to consider for determining essential functions, it is not conclusive. *See Reyer v. Saint Francis Country House*, 243 F. Supp. 3d 573, 593 (E.D. Pa. 2017). Courts also consider whether employees actually performed these activities in determining whether there is an issue of fact for a jury to weigh. *Id.* at 593–94. Mr. Moskowitz contends that "whether a particular function is essential 'is a factual determination that must be made on a case by case basis [based upon] *all* relevant evidence.'" *Supinski v. United Postal Serv., Inc.*, 413 F. App'x 536, 540 (3d Cir. 2011) (quoting *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 148 (3d Cir. 1998)) (emphasis in original).

Mr. Moskowitz testified at his deposition that he "probably" could lift 20 pounds if needed, but never needed to do so, and that he never needed to help students with toileting issues. Moskowitz Dep. Tr. at 101:14–102:12, Doc. No. 55-2. District employees similarly testified that they did not believe instructional aides ever needed to perform these and other physical activities

listed in the job description.  Because he was never asked to perform these physical duties, Mr.

Moskowitz argues that lifting and toileting were not essential functions of his role.  Additionally,

he emphasizes that the District's own employees testified that they were not aware of any physical

tasks that Mr. Moskowitz could not perform.

Thus, Mr. Moskowitz has introduced sufficient evidence to demonstrate a genuine dispute

of material fact regarding whether he was qualified for the job of an instructional aide.  *Reyer*, 243

F. Supp. 3d at 593–94.

### 2.     *Adverse Action*

Next, the District argues that Mr. Moskowitz has failed to establish an adverse action for

his discrimination claim because the evidence, according to the District, establishes that ESS was

the decisionmaker that terminated his employment.  The District asserts that it "never asked for

[Mr. Moskowitz] to be removed from his assignment."  Doc. No. 51-1, at 9 n.2.  ESS disputes this,

pointing to Ms. Johnson's response to Ms. Foley's email, which suggests that the District wanted

to remove Mr. Moskowitz.  ESS Reply Br., Doc. No. 63, at 3–4; Pl.'s Ex. M, Doc. No. 55-14 ("We

need someone who can meet the expectations of the position.").

Separately, ESS argues that there is no evidence of adverse action in its involvement in the

termination of Mr. Moskowitz's placement at the District because it continued to try to find Mr.

Moskowitz other placements.  At oral argument, ESS cited *Trent v. Test Am., Inc.*, 559 F. App'x

180 (3d Cir. 2013), to argue that a staffing agency's failure to reassign a temporary employee is

not an "adverse action."

Despite squabbling over who ultimately made the decision, neither defendant challenges

Mr. Moskowitz's theory of joint employer liability for this termination.  Joint employers can be

liable for acts of discrimination even if one co-employer "did not directly engage" in the conduct

at issue. *Graves v. Lowery*, 117 F.3d 723, 729, 729 n.12 (3d Cir. 1997); *see also Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 218 (3d Cir. 2015) 218 (noting the applicability of the joint employer analysis to "temporary employment arrangements, with attendant potential liability under Title VII for the clients of those temporary employment agencies"). Joint employment exists when both employers "exercise significant control over the same employees." *Graves*, 117 F.3d at 727. The relationship between a placement agency and the employer at which the worker is placed is a classic example of joint employment. *Faush*, 808 F.3d at 219 (citing Enforcement Guidance No. 915.002: Application of EEO Laws To Contingent Workers Placed By Temporary Employment Agencies and Other Staffing Firms, 1997 WL 33159161, at *5–6 (Dec. 3, 1997)); 29 C.F.R. § 825.106(b)(1) ("[J]oint employment will ordinarily be found to exist when a temporary placement agency supplies employees to a second employer."). Neither the District nor ESS cite, let alone analyze, the relevant factors to dispute that they were joint employers. *See Myers v. Garfield & Johnson Enters., Inc.*, 679 F. Supp. 2d 598, 607 (E.D. Pa. 2010) (citing *N.L.R.B. v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1123 (3d Cir. 1982) and *Graves*, 117 F.3d at 727). Rather, Ms. Foley testified that ESS never ends placements without the District's approval. Foley Dep. Tr. at 27:16-19, Doc. No. 55-25.

Reasonable jurors could view the email exchange between Ms. Foley (ESS) and Ms. Johnson (Neshaminy School District) as both defendants exercising "significant control over" Mr. Moskowitz's employment as joint employers participating in the adverse action. *Graves*, 117 F.3d at 727. Thus, the Court will deny both summary judgment motions on the discrimination claim based on the termination decision.

B. <u>Failure to Accommodate</u>

Mr. Moskowitz also asserts a disability discrimination claim based on a failure to accommodate theory. The District and ESS both argue that Mr. Moskowitz has failed to produce competent evidence that he requested any accommodation from them. The District also argues that intermittent leave is not a reasonable accommodation for a worker from a placement agency and ESS argues that Family and Medical Leave Act (FMLA) leave is not a reasonable accommodation because Mr. Moskowitz was not eligible under the FMLA.

"To show that an employer failed to participate in the interactive process, a disabled employee must demonstrate: 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Taylor*, 184 F.3d at 319–20. "Under the ADA, an employee must make an initial request for an accommodation in order to trigger an employer's obligation to participate in the interactive process of designing a reasonable accommodation for the employee's disability." *Boice v. Se. Pa. Transp. Auth.*, No. 05-cv-4772, 2007 WL 2916188, at *13 (E.D. Pa. Oct. 5, 2007). "The employer's duty to engage in the interactive process commences once the employee has provided information that 'the employer can be fairly said to know of both the disability and desire for accommodation.'" *Id.* (quoting *Taylor*, 184 F.3d at 312).

1. *Request for Accommodation*

First, the District and ESS argue that no reasonable jury could find that Mr. Moskowitz requested an accommodation. For a failure to accommodate claim, the issue is whether the employee provided "sufficient notice to trigger the employer's duty to engage in the interactive

process." *Taylor*, 184 F.3d at 313. Mr. Moskowitz need only show that "the employer can be fairly said to know of both the disability and desire for an accommodation." *Id.* While an employer cannot be expected to read an employee's mind, the request need not be formal. *Id.* Simply put, "the notice . . . must make clear that the employee wants assistance for his or her disability." *Id.*

"What information the employee's initial notice must include depends on what the employer knows." *Id.* The Third Circuit Court of Appeals has explained that, on the one hand, an employee who tells their employer about a medical condition but says that they are ok (without providing further information) has not requested an accommodation. *Id.* On the other hand, where an employee experiences a medical episode at work and "the school district knew []he was hospitalized immediately thereafter," "it hardly should have come as a surprise that [he] would want some accommodations." *Id.* at 313–314. "Therefore, the employee has effectively requested accommodation when he or she has provided the employer with sufficient information to know of the employee's disability and desire for accommodation or when circumstances would cause a 'reasonable employer to make appropriate inquiries about the possible need for an accommodation.'" *Emmell v. Phoenixville Hosp. Co., LLC*, 303 F. Supp. 3d 314, 329 (E.D. Pa. 2018) (quoting *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 506 (3d Cir. 2010)).

Although Mr. Moskowitz testified that he told Principal Staub he would need "a few days off" as he was departing for the hospital, Moskowitz Dep. Tr. at 159:13–17, 286:23-284:7, Doc. No. 55-2, Principal Staub testified that Mr. Moskowitz did not make such a request, Staub Dep. Tr. at 72:21–23, Doc. No. 51-11. The District argues that Mr. Moskowitz's testimony that he asked Principal Staub for a few days off as he was being taken to the hospital is self-serving and uncorroborated, and that no reasonable juror would credit it.

Drawing all inferences in Mr. Moskowitz's favor, the Court must conclude that it would be possible for a reasonable juror to conclude that Mr. Moskowitz did inform Principal Staub he would need a few days off. Principal Staub testified that, on the day his employment was terminated (January 8, 2020), Mr. Moskowitz "begged" him not to call 911 but Mr. Staub did not respond and "just made the call." Staub Dep. Tr. at 71:12–19, Doc. No. 51-11. Principal Staub also testified that Mr. Moskowitz had indicated during a prior visit to the nurse's office (in August 2019) that he did not want them to call an ambulance because he "couldn't afford to miss work." *Id.* at 43:16–19. Mr. Moskowitz testified that he did not recall asking Mr. Staub not to call 911 on January 8, but said that "if they were going to take me to the hospital, I believe I told them, well, I'm going to need a few days off." Moskowitz Dep. Tr. at 143:10–15, 159:13–17, Doc. No. 55-2. Thus, what Mr. Staub describes as Mr. Moskowitz begging him not to call 911 could well be the same exchange in which Mr. Moskowitz told Mr. Staub that calling 911 would mean he had to take a few days off, without a response.

Additionally, the case law that the District cites regarding failure to request an accommodation involves plaintiffs who actively hid their disabilities from their employer. *See e.g., Lei Ke v. Drexel Univ.*, No. 11-cv-6708, 2013 WL 5508672 (E.D. Pa. Oct. 4, 2013) (partially blind medical student did not request a vision-related accommodation because he was "afraid of jeopardizing his career"). Here, there is no evidence that Mr. Moskowitz hid his hospital visit or need for time off. Rather, there is a material factual dispute whether he asked Principal Staub for time off on January 8, 2020. Resolution of this factual dispute that is important for the failure-to-accommodate claim is the province of the jury. *Anderson*, 477 U.S. at 248.

Although there is no evidence that Mr. Moskowitz requested leave from ESS on January 8, Ms. Foley did know that Mr. Moskowitz was being taken to the hospital for a medical condition

and that he had previously needed time off for his medical conditions.[4]  Pl's Counter-Statement of Material Facts ⁋ 57, Doc. No. 55-1.  Such "circumstances would cause a 'reasonable employer to make appropriate inquiries about the possible need for an accommodation.'"  *Emmell*, 303 F. Supp. 3d at 329 (quoting *Colwell*, 602 F.3d at 506).  Thus, a reasonable jury could conclude that both the District and ESS were on notice of Mr. Moskowitz's need for leave on January 8 for purposes of his failure to accommodate claim.

Mr. Moskowitz also asserts that he requested FMLA leave from ESS on January 13, 2020. A request for FMLA leave can qualify as a request for accommodation under the ADA.  *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 156–57 (3d Cir. 2017).  Thus, Mr. Moskowitz has produced sufficient evidence of a request for accommodation from ESS on January 13th as well.

    *2.    Reasonable Accommodation*

The ADA provides for only reasonable accommodations.  Because Mr. Moskowitz made different types of leave requests on January 8th and January 13th, the Court must analyze each.

    a.    <u>January 8th Request for Leave</u>

The District argues that Mr. Moskowitz's desired accommodation of intermittent leave was not a reasonable accommodation because (1) a request to be relieved from an essential function is unreasonable and (2) he was a temporary worker from a placement agency.  The District's essential functions argument based on attendance fails to meet its summary judgment burden for the reasons discussed above.

---

[4]  Mr. Moskowitz also asserts that he requested leave from Ms. Foley in the fall of 2019.  Pl.'s Counter-Statement of Material Facts ⁋ 70, Doc. No. 55-1, at 9.  The evidence Mr. Moskowitz cites is simply Ms. Foley's testimony that he told her he was taking a day off due to his medical issues and asked her to enter an absence.  Foley Dep. Tr. at 61:23–62:8, Doc. No. 55-25.  He does not assert that ESS failed to fulfill this request, but this evidence does show that Ms. Foley was aware of his medical conditions.

Turning to the reasonableness of allowing intermittent leave for a temporary worker, the District acknowledges that reasonableness determinations involve a factual assessment. Doc. No. 51-1, at 9.[5] This is the role of the jury. *Turner v. Hershey Chocolate U.S.,* 440 F.3d 604, 611 n.4 (3d Cir. 2006); *Bernhard v. Brown & Brown of Lehigh Valley, Inc.,* 720 F. Supp. 2d 694, 702–03 (E.D. Pa. 2010).

Further, "the question of reasonableness is one that is determined when *both* parties engage in the interactive process to find accommodations." *Kortyna v. Lafayette Coll.,* 47 F. Supp. 3d 225, 240 n.50 (E.D. Pa. 2014); *see also Bernhard,* 720 F. Supp. 2d at 701 (noting "the employer cannot merely dismiss [the employee's] request out of hand as unreasonable"). Both the District and ESS received notice that Mr. Moskowitz would need some amount of time off when he was taken to the hospital for a medical emergency, yet neither inquired into how much leave he would need in order to determine if accommodating his disability would impose a staffing hardship. They did not even wait to see if he would return the next day. A reasonable jury could find that the District and ESS did not attempt to find a reasonable accommodation for Mr. Moskowitz. Thus, Mr. Moskowitz's failure to accommodate claim based on his January 8th request for leave against the District survives the summary judgment motion.

---

[5] The District cites case law from the Tenth Circuit for the proposition that it is unreasonable to allow intermittent leave for a worker from a temporary staffing agency. Doc. No. 51-1, at 8-9 (citing *Punt v. Kelly Servs.,* 862 F.3d 1040 (10th Cir. 2017)). But the District cites no case law from courts in the Third Circuit to support this proposition. And even in the cases cited, the Tenth Circuit Court of Appeals addressed the scenario of a temporary worker who requested a leave of absence (for cancer treatment) during which their position would be held open as opposed to intermittent leave if emergencies arose. *Punt,* 862 F.3d at 1051. Mr. Fox also testified that the District provides emergency substitutes for special education teachers. This also calls into question how "unreasonable" it would be to accommodate Mr. Moskowitz's potential emergencies as an instructional aide.

b. January 13th FMLA Leave Request

However, Mr. Moskowitz's request for FMLA leave from ESS on January 13th was, as a matter of law, not a request for a reasonable accommodation. "In deciding whether a genuine issue of material fact exists regarding the reasonableness of the requested accommodation, [the Court] first examine[s] whether [Mr. Moskowitz] has made a facial showing that h[is] proposed accommodation is possible." *Turner*, 440 F.3d at 614; *see also Heightened Indep. & Progress, Inc. v. Port Auth. of N.Y. & N.J.*, 693 F.3d 345, 353 (3d Cir. 2012) (citing *Turner*). A request is unreasonable as a matter of law if it is not possible. *Turner*, 440 F.3d at 614.[6]

Here, Mr. Moskowitz does not argue that he was actually eligible for FMLA leave. And he submitted his FMLA leave request on January 13, after his placement was already terminated. Mr. Moskowitz makes no argument that it was possible for ESS to provide FMLA leave for him and did not dispute this point at oral argument. To the extent Mr. Moskowitz otherwise alleges that ESS failed to help him find another position, the record clearly establishes that this too was impossible because he rejected the other permanent placements that ESS had available (at Everitt) and refused to apply for substitute positions.

Because Mr. Moskowitz failed to make a facial showing that his request for FMLA leave was possible, the Court will grant summary judgment for ESS on the failure to accommodate claim based on the January 13th request. However, Mr. Moskowitz's discrimination claims against ESS based on the January 8th termination remain.

---

[6] If a plaintiff fails to make a facial showing that his proposed accommodation was reasonable, the Court need not analyze whether the employer engaged in the interactive process. *Turner*, 440 F.3d at 614; *Lee v. Kmart*, 741 F. App'x 894, 897 (3d Cir. 2018).

## II.     Retaliation

Mr. Moskowitz also asserts retaliation claims under the ADA and PHRA.  The purpose of such anti-retaliation provisions is to "promote the reporting, investigation, and correction of discriminatory conduct in the workplace." *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 569 (3d Cir. 2002).  Mr. Moskowitz alleges that the District and ESS retaliated against him for making leave requests by firing him.

Mr. Moskowitz's ADA and PHRA retaliation claims follow the familiar *McDonnell Douglas* burden-shifting framework.  *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007); *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).  First, Mr. Moskowitz must establish a *prima facie* case of retaliation.  *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015).  Then, the burden shifts to the defendants to assert a "legitimate, non-retaliatory reason for having taken the adverse action." *Id.*  If they do so, the burden shifts back to Mr. Moskowitz to "demonstrate that [their] proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Id.* (internal quotation marks omitted). "Although the burden of production of evidence shifts back and forth, the plaintiff has the ultimate burden of persuasion at all times." *Id.*

### A. Prima Facie Case

"To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse*, 126 F.3d at 500. Establishing a prima facie case is a "low bar" for plaintiffs to clear. *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006).

The District argues that Mr. Moskowitz did not engage in protected activity and that he fails to establish that his employment was terminated because of his engagement in protected activity. Experiencing a disability-related emergency that is likely to require accommodation is not itself protected activity for a retaliation claim. *Lackey v. Heart of Lancaster Reg'l Med. Ctr.*, 704 F. App'x 41, 50 (3d Cir. 2017). This is because the purpose of the anti-retaliation provision is to protect those who exercise their rights to address disability discrimination. *Fogleman*, 283 F.3d at 569. But an explicit "request for additional leave is protected activity under the ADA" for retaliation purposes. *Bernhard*, 720 F. Supp. 2d at 703.

For the same reasons discussed above, a reasonable jury could conclude that Mr. Moskowitz communicated an informal request for leave to Principal Staub. And termination of employment constitutes an adverse employment action. *Barnees v. Nationwide Mut. Ins. Co.*, 598 F. App'x 86, 90 (3d Cir. 2015). Thus, the key issue for Mr. Moskowitz's prima facie case is whether he has introduced evidence to support a causal link between his protected activity and the termination decision.

Mr. Moskowitz argues that "temporal proximity between the protected activity and the termination is itself sufficient to establish a causal link." *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003). Shortly before Ms. Foley and Ms. Johnson's email exchange terminating Mr. Moskowitz's employment, Ms. Foley spoke with Principal Staub, who expressed concerns regarding Mr. Moskowitz continuing in his role. Pl.'s Resp. to ESS's Statement of Material Facts ¶¶ 25–26, Doc. No. 56-1, at 24.[7] According to Mr. Moskowitz, the termination

---

[7] Although the Special Education department supervises instructional aides, Principal Staub also plays a role in hiring and firing decisions at the high school. But even if he was not a decisionmaker, Mr. Moskowitz has introduced evidence from which a reasonable jury could conclude that Principal Staub "played a substantial role in the ultimate decision" to terminate Mr. Moskowitz's employment. *McKenna v. City of Phila.*, 649 F.3d 171, 179 (3d Cir. 2011).

mere hours after he requested leave establishes a causal link to satisfy a prima facie case of retaliation.

Because the initial burden in establishing a *prima facie* case is relatively low and the Court draws all inferences in Mr. Moskowitz's favor as the non-movant, the Court finds that Mr. Moskowitz meets this initial step for his retaliation claim based on temporal proximity.

B. Defendants' Asserted Non-Retaliatory Reasons

Next, the burden shifts to the defendants to articulate a non-retaliatory justification for the termination decision. *Krouse*, 126 F.3d at 500. "The employer's burden at this stage is relatively light: it is satisfied if the defendant articulates any legitimate reason for the [termination]; the defendant need not prove that the articulated reason actually motivated the [termination]." *Id.* at 500–01 (internal quotation marks omitted).

The District maintains that Mr. Moskowitz's employment was terminated because he could not perform his job due to his medical issues. Ms. Foley testified that Principal Staub provided the following reasons for his concern about Mr. Moskowitz's continued employment:

> He let me know that the incident had occurred in front of students, that he had to be taken away via ambulance; that [this] left the classroom without coverage, and they were concerned for both Myron's health and the impact it would have on the students of seeing that type of medical issue, as well as that this had happened other times previously this school year and that he was concerned with Myron's ability to complete the job requirements.

Pl.'s Resp. to ESS's Statement of Material Facts ¶ 25, Doc. No. 56-1, at 24.

None of these interrelated reasons involve Mr. Moskowitz's protected activity of requesting leave from Principal Staub. The Court concludes from the record that the District and ESS have met their burden to offer a non-retaliatory justification for the termination decision.

C. Pretext

The burden now shifts back to Mr. Moskowitz to introduce evidence from which a reasonable jury could conclude that the employers' proffered justification is not the real reason for the termination decision, but rather, "mere pretext for unlawful retaliation." *Krouse*, 126 F.3d at 498, 501. To do so, Mr. Moskowitz must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-[retaliatory] reasons." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) (internal quotation marks omitted).

Mr. Moskowitz challenges the truth of the District's assertion that he was not qualified for his role. But, to provide evidence of pretext, Mr. Moskowitz "cannot simply show that the employer's decision was wrong or mistaken." *Id.* Rather, he must introduce evidence "to convince the factfinder both that the employer's proffered explanation was false, and that [retaliation] was the real reason" for the adverse employment action. *Id.* at 763. In other words, it is Mr. Moskowitz's burden to poke such holes in the proffered reason that a reasonable jury could conclude that the defendants' asserted justifications are a "coverup." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 517 (1993).

Mr. Moskowitz has introduced no evidence to rebut the defendants' assertion that his employment was terminated because the District thought he was not able to perform his job and that the decision had nothing to do with a request for a few days off from Principal Staub. Mr. Moskowitz does not refute Ms. Foley's description of her January 8th conversation with Principal Staub. *See* Pl.'s Resp. to ESS's Statement of Material Facts ¶ 25, Doc. No. 56-1, at 24. In fact, Mr. Moskowitz maintains that his employment was terminated because of his medical issues—

that is the crux of his discrimination claim. Pl.'s Counter-Statement of Material Facts ¶¶ 94–96, 104, Doc. No. 55-1, at 11.[8]

The summary judgment record supports the defendants' asserted non-retaliatory motivation.[9] In the email exchange regarding the termination of Mr. Moskowitz's employment, neither Ms. Johnson nor Ms. Foley mentioned Mr. Moskowitz requesting leave or made any statements from which retaliatory animus based on this request could be drawn. Pl.'s Ex. M, Doc. No. 55-14. In fact, none of the decisionmakers involved in the termination decision besides Principal Staub were even aware of Mr. Moskowitz's asserted request for a few days off on January 8.[10] *See Moore v. City of Phila.*, 461 F.3d 331, 351 (3d Cir. 2006); *Crosbie v. Highmark Inc.*, No. 21-1641, 2022 WL 3696578, at *3 (3d Cir. Aug. 26, 2022). Thus, Mr. Moskowitz fails to introduce evidence to rebut the defendants' non-retaliatory explanation and show that retaliatory animus was the real reason for the termination of his employment.

Finally, Mr. Moskowitz argues that his request to Ms. Foley for FMLA leave was protected activity for a retaliation claim. However, he did not make this request until January 13th, after the termination of his position at the District. Pl.'s Ex. Q, Doc. No. 56-18.[11] Because a retaliation

---

[8] Although Mr. Moskowitz argues that no students expressed concern to Principal Staub about his medical episodes, Pl.'s Counter-Statement of Material Facts ¶ 68, Doc. No. 55-1, at 8, this does not render Principal Staub's asserted concern that students could potentially see a medical episode an implausible one.

[9] Mr. Moskowitz argues that evidence used to support his prima facie case may also be used to show pretext. But, although temporal proximity was relevant at the *prima facie* stage, the timing does not rebut the defendants' proffered justification. *See Doe v. Mercy Cath. Med. Ctr.*, No. 15-cv-2085, 2019 WL 3243249, at *14 (E.D. Pa. July 17, 2019), *aff'd*, 855 F. App'x 842 (3d Cir. 2021); *see also Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 n.5 (3d Cir. 2000) (noting that the Third Circuit Court of Appeals' "pronouncements regarding temporal proximity and causation need to be assessed with the understanding that the relative evidentiary impact of temporal evidence may vary depending upon the stage of the *McDonnell Douglas* proof analysis").

[10] Ms. Johnson and Mr. Devlin testified that no one told them about Mr. Moskowitz requesting any days off. Mr. Moskowitz also testified that he did not request time off from Ms. Foley until after the termination. Moskowitz Dep. Tr. at 160:22–161:6, Doc. No. 55-2.

[11] To the extent that Mr. Moskowitz relies on his fall of 2019 request for Ms. Foley to enter an absence for a medical issue, this fails to establish temporal proximity with the January 8 termination decision. *See Yu*

claim requires "adverse action by the employer either after or contemporaneous with the employee's protected activity," a post-termination request for leave cannot form the basis for a retaliation claim. *Krouse*, 126 F.3d at 500. Additionally, Mr. Moskowitz does not provide any evidence of later adverse action that could be attributed to this request. Rather, the summary judgment record establishes that he did not receive further placements from ESS because he did not apply for the available positions.

In sum, Mr. Moskowitz has not introduced evidence from which a reasonable jury could conclude that retaliation for any protected activity motivated the termination decision. *See Lackey*, 704 F. App'x at 50 ("Even if [the plaintiff] made a request, . . . we see nothing in the record linking the request to her termination."). Thus, the Court will grant summary judgment for the defense on Mr. Moskowitz's retaliation claims.

### CONCLUSION

For the foregoing reasons, the Court grants Neshaminy School District and ESS's motions for summary judgment in part as to the failure-to-accommodate claim based on the January 13 FMLA leave request to ESS, both retaliation claims, and all claims against HR Services Group LLC. The Court denies the remainder of the motions. An appropriate Order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

*v. U.S. Dep't of Veterans Affs.*, 528 F. App'x 181, 185 (3d Cir. 2013) ("Temporal proximity can reveal that [a] termination was retaliation . . . if the proximity is 'unusually suggestive'—meaning within a few days but no longer than a month.").